UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMAND BRADLEY, individually, and on behalf of all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br><br>BROOKHAVEN BOROUGH,<br>    Defendant,<br><br>LAMPERT'S GARAGE, LLC D/B/A LAMPERT'S GARAGE, AND KEITH CORONT,<br>    Third-Party Defendants. | Case No.  25-cv-155 |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

I.  **INTRODUCTION**

Plaintiff Armand Bradley respectfully moves for preliminary approval of the proposed class action settlement agreement attached hereto as Exhibit A (the "Settlement") and for conditional certification of the Settlement Class, which will resolve Plaintiff's and all proposed Settlement Class Members' claims in this action against Defendant Brookhaven Borough ("Brookhaven" or "Defendant") concerning the alleged lack of a notice and hearing in connection with vehicles Brookhaven towed between January 1, 2023 and June 30, 2024 (the "Class Period"). Brookhaven does not oppose this motion. The Settlement does not resolve any claims against Third-Party Defendants Lampert's Garage, LLC and Keith Coront (collectively, "Lampert's" or "Third-Party Defendants").

Preliminary approval should be granted because the Settlement provides substantial relief for the Settlement Class, and the Settlement's terms are fair, adequate, and reasonable. Under the Settlement, Brookhaven will commit $1,250,000 to a non-reversionary fund, from which two cash benefits will be paid. First, Settlement Class Members whose towed vehicles were never retrieved are eligible for an Unretrieved Vehicle Payment, equal to the current market value of their vehicle. Second, all remaining funds will be shared pro rata amongst all Settlement Class Members as an Inconvenience Fee. Additionally, Brookhaven has agreed to practice changes reasonably necessary to ensure notice and a hearing are provided timely in connection with tows.

Simply put, the Settlement represents significant value to the Class, and is fair, adequate, and reasonable.  For these reasons, discussed more fully below, Plaintiff asks this Court to issue an order preliminarily approving the Settlement, appointing Plaintiff as settlement class representative, appointing undersigned as Class Counsel, approving the class notice program, and setting a date for a final approval hearing.

## II. BACKGROUND

### A. Summary of This Action

Plaintiff commenced this action by filing a putative class action complaint on January 10, 2025. *See* Compl. (ECF). Plaintiff's complaint alleges that Brookhaven failed to provide notice and a hearing in connection with vehicles towed between January 2021 and the spring of 2024. *Id.* ¶¶ 1, 4-5. Absent notice and an opportunity to be heard, let alone instructions on how to retrieve their vehicles, putative class members were wrongly denied their property under various constitutional protections. *Id.* ¶¶ 5-8. The six-count Complaint alleges procedural and substantive violations of due process rights guaranteed under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 and analogous state law (Counts I and II); unlawful takings and seizures under the Fourth and Fifth Amendments, pursuant to 42 U.S.C. § 1983 and analogous state law (Count III); negligence (Count IV); unjust enrichment (Count V); and a claim to reasonable attorneys' fees and costs under 42 U.S.C. § 1988 (Count VI). *Id.* ¶¶ 53-98.

Brookhaven moved to dismiss the Complaint on February 18, 2025. *See* ECF 11. On March 20, 2025, the Court largely denied Brookhaven' motion. *See* ECF 19, 20. On April 17, 2025, Brookhaven filed a joinder complaint against Lampert's. *See* ECF 21. Discovery ensued, and the parties have since completed fact discovery.

### B. Settlement Negotiations

As previously reported to the Court, Plaintiff and Brookhaven engaged in extensive arm's-length negotiations, including an in-person mediation on December 2, 2025 before the Hon. Lawrence F. Stengel (Ret.), former United States District Judge for the Eastern District of Pennsylvania. They had extensive additional negotiations through the mediator thereafter. With the assistance of the mediator's efforts, Plaintiff and Brookhaven have reached agreement to

resolve Plaintiff's claims against Brookhaven, and have agreed to the terms set forth in this Agreement. On January 23, 2026, this Court stayed all deadlines through February 6, 2026, directed Plaintiff and Brookhaven to finalize a written settlement agreement by February 6, 2026, and directed Plaintiff to file this Motion by February 11, 2026. *See* ECF 40.

### III.   OVERVIEW OF SETTLEMENT

#### A.   The Settlement's Key Terms

The Settlement contemplates the following settlement class:

> all persons whose vehicles were towed by Lampert's on behalf of Brookhaven between January 1, 2023 and June 30, 2024. Excluded are: (a) any Settlement Class Members who file a timely request for exclusion; (b) any officers, directors, or employees, or immediate family members of the officers, directors, board members, officials, legal counsel, or employees of Brookhaven or any entity in which Brookhaven has a controlling interest; and (c) any judicial officers presiding over the Action and the members of their immediate family and judicial staff.

Ex. A at § 1.28. The Settlement provides that Brookhaven will create a non-reversionary settlement fund of $1,250,000. *Id.* at § 2.1. After payment of class notice and administration costs, attorneys' fees plus expenses, and any service award, Settlement Class Members who never retrieved their vehicles are eligible for an Unretrieved Vehicle Payment equal to the estimated current market value of their vehicle. *Id.* §§ 1.34, 1.35, 2.2(a). All remaining money will then be fund Inconvenience Fee payments, which all Settlement Class Members are eligible to receive on a pro rata basis. *Id.* § 2.2(b).

The Settlement provides for non-monetary relief as well. Brookhaven will implement business practice changes reasonably necessary to ensure that notices and hearing are timely provided consistent with local, state, and federal law. *Id.* § 2.3.

As consideration for the monetary and injunctive relief, Brookhaven will receive a release from each Settlement Class Member as more specifically delineated in the Settlement with respect

3

to claims that were or could have been alleged in the complaint. *Id.* at §§ 3.1, 3.2. However, neither Settlement Class Members' claims, nor Brookhaven's claims, against Lampert's will be released. *Id.* § 1.23. Further, Plaintiff may elect to receive Brookhaven's assigned claims against Lampert's between preliminary and final approval. *See* § 2.4.

The Settlement provides that Plaintiff may seek attorneys' fees of up to one-third of the settlement fund plus costs, and also may seek a service award for Plaintiff up to $5,000. *Id.* at §§ 2.64, 2.7. Any service award, attorneys' fees, and costs will be paid by from the monetary relief available to the Settlement Class, along with notice and claims administration fees. *Id.* at § 2.1(a). Fidexis, the firm selected to serve as notice and claims administrator, has estimated the latter to be approximately $50,000-$60,000 depending on the number of Settlement Class Members, which is typical for a case and notice program of the sizes here. *See* Ex. B (Counsel Decl.) at ¶ 13.

### B.   Notice and Claims Administration

The parties have chosen Fidexis to serve as notice and claims administrator. The Settlement contemplates a notice program consisting of direct notice in the form of mail notice, as well as publication notice via a settlement website. Ex. A at § 5.2. Direct mail notice will be accomplished by use of data furnished by Brookhaven. *Id.* at § 5.2(c).

Both the proposed long-form and short-form class notice have been designed to give the best notice practicable; are tailored to reach members of the Settlement Class; and are reasonably calculated under the circumstances to apprise the Settlement Class of the Settlement and, specifically, each Settlement Class Member's rights (i) to make claims, (ii) to exclude themselves from the Settlement, or (iii) to object to the Settlement's terms, or Class Counsel's anticipated fee application and request for a service award for Plaintiff. *Id*. at § 5.2. All forms of notice will

4

include, among other information: (i) a context-appropriate description of the Settlement; (ii) the date by which Settlement Class Members may make a claim, exclude themselves from the Settlement Class, or object to the Settlement; and (iii) the address of the Settlement Website. *Id.* at § 5.2(a)-c). Requests for exclusion or objections must be sent to Fidexis and the parties as provided in the Settlement. *Id.* at §§ 5.5, 5.6. The deadlines for objections, requests for exclusion, and claims are all before the Fairness Hearing and before Plaintiff files his motion for attorneys' fees, costs, and service award. *Id.*

In sum, the notice program constitutes sufficient notice to persons entitled to receive it, and satisfies all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

## IV. THE SETTLEMENT SATISFIES THE PRELIMINARY APPROVAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure provides for judicial approval of the compromise of claims brought on a class basis if the proposed class action settlement is "fair, reasonable, and adequate." Approval of class action settlements is committed to the sound discretion of the district court. *See* Fed. R. Civ. P. 23(e). In exercising its discretion, district courts are mindful of the strong judicial policy favoring settlements. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595-96 (3d Cir. 2010) ("strong presumption" in favor of class settlements).

According to the United States Court of Appeals for the Third Circuit, there is "an initial presumption of fairness when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768, 785 (3d Cir. 1995); *see, e.g.*, *Zimmerman v.*

*Zwicker & Assocs., P.C.*, No. 09-3905 (RMB/JS), 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."). At the final approval stage, an expanded set of these factors are often referred to as the *Girsh* factors (e.g., reactions of the class to the settlement, etc.). *See In re GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

Here, all of the pertinent factors at this preliminary approval stage under *In re GMC* and *Girsh* support preliminary approval.

***Arm's Length Negotiation***.  Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval." *Newberg on Class Actions* § 11.41 (4th ed. 2002). Additionally, "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Walker v. Highmark BCBD H. Options, Inc.*, No. 20-cv-01975, 2022 WL 17592067, at *3 (W.D. Pa. Dec. 13, 2022) (internal quotation marks and citation omitted).

Here, the parties engaged in arm's length negotiations with the assistance a very experienced neutral mediator, the Hon. Lawrence F. Stengel (Ret.), former United States District Judge for the Eastern District of Pennsylvania, to mediate. *See* Ex. B at ¶ 2. With the mediator's assistance, experienced counsel for each side, informed about the facts and familiar with the strengths and weaknesses of their respective positions, had repeated back-and-forth discussions about a potential settlement in principle with each other and through Judge Stengel. *Id.* at ¶¶ 2-4. Between the information exchanged between the parties, the risks of continued litigation, and an

appreciation for the substantial value the Settlement delivers to the Settlement Class when evaluated in this context, the parties reached a resolution. *Id.*

***There Was Substantial Discovery.*** The parties completed fact discovery before engaging in mediation. Ex. B at ¶ 4. All parties – Plaintiff, Brookhaven, and Lampert's – propounded written discovery on each other. Each party provided written interrogatory responses and produced documents. *Id.* Brookhaven, in particular, produced over 8,000 pages of documents including but not limited to police incident reports and other police records concerning towed vehicles, electronic data about vehicles towed during the class period, relevant police policies, electronic documents and emails from negotiated Brookhaven document custodians, and borough minutes and other documents concerning towing activities, procedures, and vendor selection. *Id.* Depositions were taken of Brookhaven's multiple Rule 30(b)(6) designees, Plaintiff, and Lampert's Rule 30(b)(6) designee and its individual deponent Mr. Coront. *Id.* Plaintiff and Brookhaven also subpoenaed a voluminous set of documents from PennDOT about the affected vehicles spanning thousands of pages, which included structured data searches that PennDOT extracted via custom-generated queries at Plaintiff's expense. *Id.* All of these discovery materials directly informed the parties and the mediator during negotiations. *Id.*

***Experienced Counsel.*** Both sides' counsel are qualified and competent class action litigators, well-positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. Plaintiff's Class Counsel has successfully handled national, regional, and statewide class actions, as well as other complex mass or multi-party actions, throughout the United States in both federal and state courts, including appointment as co-lead counsel in other cases in this District involving deprivations of constitutional rights such as *Candido v. Upper Darby Township*, No. 2:23-cv-01542 (E.D. Pa.), and multiple recent large

7

matters in this Circuit such as *In re Valsartan, Losartan, & Irbesartan Products Liability Litigation*, No. 19-md-2875 (D.N.J.) and *In re Metformin Marketing and Sales Practices Litigation*, No. 20-cv-02345 (D.N.J.). *See* Ex. B at ¶¶ 10-12.

***The Settlement Is Within the Range of Reasonableness.*** In preliminarily assessing whether a settlement falls within the range of reasonableness, courts examine the potential relief to the class. *See, e.g.*, *Zimmerman*, 2011 WL 65912, at *2. The reasonableness of the Settlement must also be viewed against the complexity, expense, and duration of litigation, the stage of the proceedings, and the likelihood of success at trial. *See, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010); *Girsh*, 521 F.2d at 157.

Here, the Settlement provides for an Unretrieved Vehicle Payment to each eligible Settlement Class Member based on current market value of the unretrieved vehicle, as well as an Inconvenience Fee for all Settlement Class Members.. *See* Ex. A at § 2.2. The parties estimate approximately 90-166 persons might be eligible for an Unretrieved Vehicle Payment, and approximately 680 persons might be eligible for Inconvenience Fees. Although the exact total of Unretrieved Vehicle Values are not yet fully calculated, the persons roughly estimate $3,500 per Unretrieved Vehicle, depending on the specific make, model, year, and other industry-standard metrics.. *See* Ex. B at ¶ 6. This would result in roughly $581,000 in Unretrieved Vehicle Payments. This would leave approximately $256,450 for Inconvenience Fees, or more than $275/person, after notice and administration costs, attorneys' fees and expenses, and a service award. Ex. B at ¶ 6. This is a significant recovery.

On top of the monetary relief, Brookhaven also will implement business practice changes reasonably necessary to ensure notice and a hearing are provided timely, consistent with local, state and federal law. *See* Ex. A at § 2.3.

In short, the Settlement will deliver significant monetary and non-monetary value to Settlement Class Members without the inherent risks and costs of continued litigation. Further litigation of this matter would require substantial resources and delay a recovery, if any. Ex. B at 7. The parties also have not yet briefed class certification, which likely would require expert disclosures and depositions, and motions for summary judgment have not yet been filed. *Id.* All of these matters would require significant time and expense, and while Plaintiff and her counsel remain committed to Plaintiff's claims, they are also pragmatic that there is no guarantee of success and that substantial obstacles exist at the summary judgment, class certification, and trial phases. *Id.*

## V. THE SETTLEMENT SATISFIES FEDERAL RULE OF CIVIL PROCEDURE 23

"In order to approve a class settlement agreement, a district court must determine that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)" are met. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). "The requirements of Rule 23(a) and (b) are designed to insure that a proposed class has sufficient unity so that absent class members can fairly be bound by decisions of class representatives." *Id.* (internal quotations and citation omitted). Here, the Settlement plainly satisfies Rules 23(a) and (b), and should be approved consistent with the "overriding interest in settling class action litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535.

### A. The Settlement Satisfies Rule 23(a)

Rule 23(a) lays out four threshold requirements for certification of a class action: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a); *In re Pet Food Prods.*, 629 F.3d at 341, n.14. The Settlement satisfies each of these requirements.

9

### 1. The Class Is Numerous

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Although no magic number exists, courts typically find the numerosity requirement to be satisfied if there are more than 40 class members. *In re NFL Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). The Settlement easily exceeds this threshold. Data produced by Brookhaven suggest there are many hundreds of Settlement Class Members. Ex. B at ¶ 6.

### 2. Common Questions of Fact and Law Exist

Rule 23(a)'s commonality requirement also is satisfied here. "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re NFL*, 821 F.3d at 426-27 (internal quotations and citation omitted). Thus, commonality is "easily met" in most instances. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Such is the case here. Plaintiff's and other Settlement Class Members' claims stem from a common course of conduct. Each Settlement Class Member's vehicle was towed by Brookhaven during the same time period, and each was denied proper and timely notice and a hearing. Each of them was harmed in the same alleged way. Brookhaven's principal defenses also are common to all Settlement Class Members.

### 3. Plaintiff's Claims Are Typical

The typicality requirement focuses on whether the interests of named class representatives align with the interests of the class. *See In re NFL*, 821 F.3d at 427-28. The Third Circuit has "set a low threshold for typicality." *Id.* (internal quotations and citation omitted). To this end, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or

course of conduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (internal quotations and citation omitted).

Plaintiff's claims are identical to those of the Settlement Class. As alleged in the Complaint, Plaintiff alleges the same type of harm arising out of the same conduct or circumstances to which other Settlement Class Members were exposed. Thus, Plaintiff meets the typicality requirement, and is well-suited to represent other Settlement Class Members.

### 4. The Adequacy Requirement Is Met

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement focuses on whether the representatives have any conflicts of interest with the interests of the class, and whether class counsel is capable of representing the class. *See Gen'l Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *In re NFL*, 821 F.3d at 428-29.

Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class because Plaintiff and the absent members of the Settlement Class have an equally great interest in the relief offered by the Settlement. Ex. B at ¶¶ 8-9. There is no divergence between Plaintiff's interests and those of the other members of the Settlement Class. *Id.* As noted above, the proposed class representative and other Settlement Class Members' claims arise from the same conduct and turn on the same alleged actions or omissions, and Plaintiff seeks remedies equally applicable and beneficial to herself and all other Settlement Class Members. Further, the proposed class representative is represented by qualified and competent Class Counsel with extensive experience and expertise in prosecuting complex class actions. *Id.*

### B. The Settlement Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.

11

Fed. R. Civ. P. 23(b)(3). Predominance focuses on the cohesiveness of the proposed class. *See, e.g.*, *In re NFL*, 821 F.3d at 434. Cohesiveness exists where questions of law or fact common to the class will turn on the same evidence, and their resolution will have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. *Id.* Courts are "more inclined to find the predominance test met in the settlement context." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc) (internal quotations and citation omitted).

Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 113 S. Ct. 1184, 1191 (2013). A plaintiff is not required "to prove that each element of her claim is susceptible to classwide proof." *Id.* at 1196. Rather, she need only show that common questions will predominate with respect to her case as a whole. *Id.*

Common fact and legal questions predominate here. The evidence necessary to prove liability for Plaintiff's claims is the same as it would be for each Settlement Class Member. Questions concerning whether Brookhaven failed to provide notice and a hearing, and why, are not only common to the Settlement Class, but are the predominant consideration in deciding whether Brookhaven is liable to Plaintiff and the Settlement Class as a whole. *See, e.g.*, *In re NFL*, 821 F.3d at 434 (common questions predominated regarding defendant's "knowledge and conduct as well as common scientific questions"). Liability questions common to the Settlement Class substantially outweigh any possible individual issues. The claims of Plaintiff and the Settlement Class are based on the same legal theories and the same conduct.

Further, resolution of the claims of Settlement Class Members through the settlement of a class action is far superior to individual lawsuits because it promotes consistency and efficiency

of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Absent certification, potential class members would lack incentive to pursue individual claims due to the relatively small individual amounts at issue. Individual class members have little interest or motivation to prosecute their own claims for low-dollar damages. *In re NFL*, 821 F.3d at 435.

By comparison, the Settlement will result in substantial, timely, and real monetary and injunctive relief. Under these circumstances, use of the class mechanism is the superior alternative for resolving this dispute as it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated. *See id.* After all, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without effective redress unless they may employ the class-action device." *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).

## VI. THE NOTICE PROGRAM IS APPROPRIATE

For due process purposes, notice to class members must be reasonably calculated to reach absent class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The notice contemplated by the Settlement is reasonably calculated to reach Settlement Class Members and to inform them of the necessary information. *Eisen*, 417 U.S. at 173.

The parties have agreed to select Fidexis as settlement administrator to effectuate the class notice and the claims process, and oversee the settlement fund. Ex. B at ¶ 13 The administrator's costs will be paid from the settlement fund. Ex. A at § 2.1. As discussed *supra*, the notice program includes direct mail notice based on Brookhaven's records and a settlement website. Combined, these efforts will maximize outreach to potential class members.

The contents of the proposed short-form and long-form notices adequately apprise Settlement Class Members of (i) the class definition, (ii) the nature of this action, (iii) the key terms of the Settlement, (iv) how to obtain additional information about the Settlement, (v) their rights to participate or opt-out and the deadlines for each, (vi) the scope of the release, (vii) the attorneys' fees and costs and service award that may be sought, and that Court approval is necessary, and (viii) provides the time and location for the Final Approval Hearing, along with a description of same. Ex. A at ¶¶ 5.2 & Exhibits referenced therein. This constitutes sufficient notice. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.312 (outlining notice considerations); *see also, e.g.*, *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 91 (3d Cir. 1985) ("[F]irst-class mail and publication regularly have been deemed adequate under the stricter notice requirements . . . of Rule 23(c)(2)."); *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 99-100 (D.N.J. 2018) (approving mail and publication notice program).

Given the foregoing, the Court should approve the form and content of the proposed notices and direct the administrator to effectuate the notice program as contemplated in the Settlement.

## VII.   PROPOSED SCHEDULE OF EVENTS

Plaintiff attaches an agreed-upon proposed preliminary approval order to this Motion which sets forth the pertinent dates for the approval, notice, claims submissions, exclusion requests, opt-outs, Plaintiff's motions for attorneys' fees, costs, and service award, objections, and final approval.

## VIII.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court preliminarily approve the Settlement, conditionally certify the Settlement Class, appoint Plaintiff as settlement

class representative, appoint the undersigned as Class Counsel, and approve the class notice program. A proposed preliminary approval order is attached to this unopposed motion.

Dated: February 11, 2026

                                         Respectfully Submitted,

                                         */s/ David J. Stanoch*
                                         Ruben Honik
                                         David J. Stanoch, Of Counsel
                                         Honik LLC
                                         1515 Market Street, Suite 1100
                                         Philadelphia, PA 19102
                                         Tel: 267-435-1300
                                         ruben@honiklaw.com
                                         david@honiklaw.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on the date below, I caused a true and current copy of the foregoing to be filed and served upon all counsel of record by operation of the court's CM/ECF system.


Dated: February 11, 2026      */s/ David J. Stanoch*
                 David J. Stanoch